IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGET BARNES, individually and as Guardian ad Litem for minor children R.X. and M.X., JERRY BARNES,<br><br>    Plaintiffs,<br><br>  v.<br><br>COUNTY OF PLACER, EMILY HILL, individually and as an employee of the County of Placer, DEPUTY HARROUN, individually and as an employee of the County of Placer, and DOES 1 through 50, inclusive,<br><br>    Defendants.<br>_____/ | Case No. 2:07-cv-01678-JAM-JFM<br><br><u>ORDER GRANTING DEFENDANTS'</u><br><u>MOTION FOR PARTIAL SUMMARY</u><br><u>JUDGMENT</u> |

    This matter comes before the Court on Defendants Emily Hill ("Hill") and Deputy Rick Harroun's ("Harroun") (collectively "Defendants") motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Brigit Barnes ("Brigit"), individually and as Guardian ad Litem

for minor children R.X. and M.X., and Jerry Barnes ("Jerry") (collectively "Plaintiffs") oppose the motion. A hearing on this motion was held before the Court on June 3, 2009.  For the reasons set forth below, Defendants' motion as to Plaintiffs' first and second claims is GRANTED.

## I.    FACTS

This Court views the facts and draws inferences in the manner most favorable to Plaintiffs as the non-moving party. Plaintiffs Jerry and Briget Barnes are the grandparents and legal guardians of minor Plaintiffs M.X. (8 year old granddaughter) and R.X. (5 year old granddaughter).  Plaintiffs' Complaint, Doc. # 2, ("Compl.") ¶ 6.

On April 22, 2006, Jerry Barnes struck M.X. with an object hard enough to leave marks/bruises on the back of M.X.'s legs after M.X. fell into a pond on the Barnes' property.  Pls' Opp. at 1:8-14.  Jerry Barnes states he struck M.X. because he wanted to impress upon her the need to stay away from the pond, which she had fallen into on a prior occasion.  Id.  On April 26, 2006, school officials from St. Joseph's Elementary School noticed marks/bruises on M.X's legs and reported the suspected child abuse to the Child Protective Services Division of the Placer County Department of Health and Human Services.  Id. at 15-19.  Defendant Emily Hill, a crises intervention social

worker, made an emergency response to the school to investigate the call.  Defs' Mot. at 1:14-18.

Ms. Hill interviewed M.X. and shortly thereafter, without contacting Brigit or Jerry Barnes, called the Placer County Sheriff's Department to report suspected child abuse.  Pl's Separate Statement of Disputed and Undisputed Material Facts, Doc. # 56, ("Pl's Facts") ¶ 19.  Defendant Deputy Sheriff Rick Harroun responded and interviewed M.X. and Ms. Hill.  Id. ¶ 22. After the interview with M.X. and another discussion with Ms. Hill, Deputy Harroun took M.X. and her five year old sister, R.X. into protective custody and turned them over to Ms. Hill. Id. ¶ 24-26.

On May 2, 2006, a detention hearing took place in the Placer County Juvenile Court.  Joint Status Report, Doc. # 15, ("Report") at 3:3.  The Court determined on a prima facie basis pursuant to Welfare & Institutions Code Section 319 that M.X. and R.X. should be detained.  Id. at 3:4-5.  They remained in protective custody until May 19, 2006.  Id. at 3:5-6.  On May 19, 2006 the Court ordered that the children return to Briget Barnes, but that Jerry Barnes could not remain with them until he completed classes on anger management and parenting.  Id. at 3:6-8.  The Court permitted Jerry Barnes to return to the home with his grandchildren on July 5, 2006.  Id. at 3:8-9.

On August 16, 2007, Plaintiffs brought a 42 U.S.C. § 1983 action against Defendants alleging an illegal warrantless seizure of M.X. and R.X. in violation of their Fourth Amendment rights, and in violation of their Fourteenth Amendment rights to familial association.  Compl. ¶¶ 82-86.  Plaintiffs also allege a violation of M.X.'s and R.X.'s Fourth Amendment right to be free from illegal and/or unreasonable seizures, arising from the continued detention of M.X. and R.X. by Ms. Hill after they were taken into protective custody without a warrant.  Id. ¶¶ 87-88.  Plaintiffs further assert a violation of Jerry Barnes's First Amendment rights arising from the forced family counseling as a condition of his return to the same house as his grandchildren. Id. ¶¶ 89-91.  Plaintiffs also allege pendent state law claims for relief including: false arrest, false imprisonment, intentional infliction of emotional distress, and negligence. Compl. ¶¶ 92-118.

In the instant motion, Defendants move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  Doc. # 52, 60.  Defendants assert they are entitled to qualified immunity as to Plaintiffs' 42 U.S.C. Section 1983 claims. Defendants also request that the Court grant partial summary judgment in their favor on Plaintiffs' state law claims for false arrest, false imprisonment and intentional infliction of emotional distress (IIED).  Finally, defendants request that the

Court decline jurisdiction over the remaining state law negligence claim and dismiss it without prejudice.  Plaintiffs oppose the motion.  Doc. # 56.

## II.  OPINION

A. Legal Standard

A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment.  See California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims and defenses."  Cleotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626,

630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e) and citing Celotex, 477 U.S. at 323). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]." Anderson, 477 U.S. at 252. This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

B. Qualified Immunity

Qualified immunity is a defense to lawsuits against governmental officials arising out of the performance of their duties. Its purpose is to permit such officials to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). When a law enforcement officer asserts qualified immunity, the inquiry has traditionally been a two-step protocol where the Court

determines first whether, "taken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, the Court must determine whether the right violated was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. If the Court concludes that both of these inquires are answered in the affirmative, the officer is not entitled to qualified immunity. Id. at 201.

In January 2009 however, the United States Supreme Court in Pearson v. Callahan reconsidered the two-step procedure for qualified immunity required in Saucier. 129 S. Ct. 808 (U.S. 2009). The Supreme Court concluded that, "while the sequence set for [in Saucier] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

Turning to the conduct of Defendants Emily Hill and Deputy Rick Harroun in this case, the Court finds that Defendants are entitled to qualified immunity because their decision to place

7

M.X. and R.X. in protective custody without first obtaining a warrant and keep them in custody until the Placer County Juvenile Court ordered their release did not violate clearly established law.  Officials may detain a child without a warrant if the facts known to them at the time of the seizure provide "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury."  Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000).  "Reasonable cause," "imminent danger" and "serious bodily injury" are not defined in Wallis, or other Ninth Circuit cases addressing the warrantless taking of a child in protective custody.  See id.; see also Ram v. Ruben, 118 F.3d 1306 (9th Cir. 1997); Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999); Mabe v. San Bernadino, 237 F.3d 1101 (9th Cir. 2001); Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007).  However, it is well established that "serious allegations of abuse that have been investigated and corroborated usually give rise to a 'reasonable inference of imminent danger sufficient to justify taking children into temporary custody' if they might be beaten or molested during the time it would take to get a warrant."  Rogers, 487 F.3d at 1294; Ram, 118 F.3d at 1311.

   Here, no prior published decisions clearly address how a social worker or deputy should respond to a confirmed physical

8

beating where the alleged perpetrator is arriving shortly to pick up the victim from school.  Nor does the case law address whether the time constraints faced by Defendants made it constitutionally reasonable to take the children into protective custody and continue investigation the next day without first contacting the "non-offending" parent or guardian.  Certainly, no prior published cases have required contact with the "other parent" where the time pressure facing the social worker or deputy was similar to that facing Hill and Harroun in this case.  Thus, even assuming *arguendo* that Defendants conduct violated Plaintiff's constitutional rights, Defendants were reasonable to believe that their conduct was within constitutional parameters.  Specifically, the Court concludes that a reasonable social worker or deputy in Hill and Harroun's position could have believed that M.X. and R.X. faced imminent danger of serious bodily harm in the time that it would have taken to obtain a warrant.  Accordingly, even if Hill and Harroun mistakenly applied the constitutional standard applicable to warrantless seizures of children in this case, they are entitled to qualified immunity on Plaintiffs' first claim for relief because any such mistake under these facts was reasonable.  See Brosseau v. Haugen, 543 U.S. 194, 201 (2004); see also Safford Unified Sch. Dist #1 v. Redding, 2009 U.S. LEXIS 4735 (U.S. June 25, 2009).

In addition, Hill is entitled to immunity as to Plaintiffs' second claim for relief because the continued detention of M.X. and R.X until the Placer County Juvenile Court ordered their release was reasonable. The standard for maintaining a Fourteenth Amendment claim for continued detention is "deliberate indifference." See County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); see also Kulya v. City & County of San Francisco, 2008 U.S. Dist. LEXIS 73952 (N.D. Cal. Sept. 26, 2008)(finding that in order for a social worker's continued detention to violate plaintiff's rights the conduct must be so offensive and intentional as to "shock the conscience"). The investigation Hill conducted on April 27, 2006 confirmed her reasonable cause to believe that returning M.X. and R.X. to their grandparents' home could place them in imminent danger of serious bodily injury. Hill, in preparing and filing her detention report, conducted a timely, thorough, and reasonably accurate investigation that gave her reasonable cause to believe that Brigit and Jerry Barnes posed a risk of serious physical injury and emotional harm to their grandchildren. The Court finds that, considering the facts in the light most favorable to Plaintiffs, the conduct undertaken by Hill does not come close to constituting conduct that was deliberately indifferent to Plaintiffs' rights. Rather, a reasonable social worker in Hill's position would have recommended that the grandchildren

remain out of the custody of Brigit and Jerry Barnes.  As such, Hill is entitled to qualified immunity as to Plaintiffs' second claim.

Moreover, at the May 2, 2006 detention hearing, the Placer County Superior Court determined that M.X. and R.X. should be detained rather than returned to the Barnes' home.  Thus, any actions taken by Hill to continue the detention of M.X. and R.X. after May 2, 2006 were pursuant to a facially valid court order and thus, she is entitled to absolute immunity.  See Cloverdell v. Dept. of Social & Health Services, 834 F.2d 758, 765 (9th Cir. 1987).  The fact that the Placer County Superior Court granted discretion to the Department of Health and Human Services to return the children to Brigit, with Jerry out of the house, contingent upon the approval of minors' counsel, does not grant discretion to Hill to return the children to Brigit.  In any event, minors' counsel did not approve the return of the children to Brigit before the Court ordered it on May 19, 2006.

In sum, Defendants' motion for summary judgment as to Plaintiffs' first and second claims for violation of 42 U.S.C. § 1983 is GRANTED.[1]

---

[1]   Plaintiffs' third claim for relief alleges that Christy Simpson violated their First Amendment rights through forced family counseling.  Because Ms. Simpson has been dismissed from all causes of action in the complaint with prejudice (Doc. # 51), Plaintiffs' third claim for relief is hereby moot.

C. Monell Claim

Defendants argue that while they did not move for summary judgment on Plaintiff's Monell claim, this Court should nonetheless grant summary judgment *sua sponte* on the claim. Plaintiffs' Reply ("Reply") 20:16-23.  *Sua sponte* summary judgment is only appropriate if the losing party has "reasonable notice that the sufficiency of his or her claim will be in issue."  Buckingham v. United States, 998 F.2d 735, 742 (9th Cir. 1993).  "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose the summary judgment."  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)(*sua sponte* summary judgment appropriate only where losing party is on notice that she had to come forward with all of her evidence).

Here, because the Defendants did not move for summary judgment on the Monell claim, the Monell issue has not been fully briefed.  The Plaintiffs have not had adequate notice nor an opportunity to respond to a summary judgment motion on the Monell claims.  As such, this Court will not grant summary judgment *sua sponte* on the Monell claim against County of Placer.

D. State Law Claims

Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental

jurisdiction over state law claims.  See Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  The court's decision whether to exercise supplemental jurisdiction should be informed by values of economy, convenience, fairness and comity.  Id. at 1001.  However, primary responsibility for developing and applying state law rests with the state courts.  Therefore, when federal claims are eliminated before trial, district courts should ordinarily decline to exercise supplemental jurisdiction.  See Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1998); Gini v. Law Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994).  Accordingly, the Court declines to retain supplemental jurisdiction over Plaintiffs' state law claims.  See 28 U.S.C. § 1367(c)(1).

### III. ORDER

For the reasons set forth above, Defendants' motion for partial summary judgment as to Plaintiffs' first and second claims is GRANTED.

IT IS SO ORDERED.

Dated: June 29, 2009

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE